DAY *v.* STATE.

Opinion delivered March 22, 1926.

1. INTOXICATING LIQUORS—POSSESSION OF STILL.—Evidence *held* to sustain conviction of possessing a still.

2. INTOXICATING LIQUORS—POSSESSION OF STILL—COMPETENCY OF EVIDENCE.—On a prosecution for operating a still, evidence of a witness that he and two other officers lay close to the still for two hours, waiting for daylight, and could hear persons operating the still, and that when they crawled up to the still they saw the three defendants sitting on the ground, *held* competent.

3. CRIMINAL LAW—MISLEADING INSTRUCTION.—In a prosecution for possessing a still an instruction that "the mere fact that defendant with other persons were (was) found at the still while the same was in operation is not alone sufficient to warrant you in convicting them as charged in this indictment," *held* properly refused as improperly singling out certain testimony and as tending to mislead the jury.

4. INTOXICATING LIQUORS—POSSESSION OF STILL—INSTRUCTION.—In a prosecution for possessing a still, it was not error to instruct to the effect that defendants would be guilty if they were present and assisting the owner in the operation of stills.

Appeal from Miller Circuit Court; *J. H. McCollum,* Judge; affirmed.

*J. M. Carter* and *B. E. Carter,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

HART, J.  Herbert Day, Bill Ward and Jesse Johnson were jointly indicted for unlawfully possessing a still, and were convicted before a jury.  The jury trying them fixed their punishment at one year in the State Penitentiary, and from judgment upon the verdict they have duly prosecuted an appeal to this court.

Clarence Beuhler, a Federal prohibition officer, was the principal witness for the State.  According to his testimony, some time in the fall of 1925, in company with E. F. Barber, the sheriff of Miller County, and Bob Smith, his deputy, they left Texarkana about one o'clock in the night time to raid a still which had been located. After driving about 25 miles, they left their car, and waited in the vicinity of the still until daylight to raid

it. They could hear voices at the still and could hear some one working at it. Soon after daylight the officers approached the still from different directions. There was a fence made out of hog wire around the still. Three men were sitting on the ground within the wire inclosure. There were two pots working. Bob Smith called to the three men, and they jumped up. The witness then recognized Bill Ward. Ward said, "All right, Mr. Barber, I won't run." Just at that time a gun was fired, and the witness saw Herbert Day fall down. The sheriff captured the defendant Johnson, and handed a pistol to the witness which Johnson said belonged to him. The defendant Day called the witness by name and said, "I did not recognize you all, and will you please take me to the hospital." This was just after he had been wounded by a shot fired by Bob Smith. The sheriff tried to capture another man who ran away. The witness proceeded to tear up the still. There were two 120-gallon copper pots fully equipped and running. There were about three gallons of whiskey in one, and the other one had been turned over, and the whiskey was running on the ground. There were 35 barrels of mash. That is, the beer had been taken out of the mash barrel, but the chops were still in the bottom of the barrels. Both pots were full of mash, and both stills were running at the time. The fuel used was gasoline. They found an automatic shotgun loaded with number 8 buckshot standing on the inside of the wire fence. A pistol was found in a tree, and another pistol which the sheriff took from the defendant, Johnson. The witness recognized the defendants as the three men captured at the still. On cross-examination the witness stated that they lay close to the still for about two hours, waiting for daylight, and could hear persons operating the still. When they crawled up to the still, they saw the three defendants sitting on the ground. The still was in Miller County, Arkansas.

It was shown at the trial that the sheriff was dead, and the testimony given by him at the examining trial of Herbert Day was read in evidence against the defendant

Day. While waiting to raid the still, the sheriff heard the defendant Herbert Day say, "Jesse, go up the south side and watch, and you come up and watch the still." Jesse Johnson and another party then started away. Jesse crawled straight towards the sheriff, and he stopped him.

It was also shown that Bob Smith, the deputy sheriff, was dead, and the testimony given at the examining trial was read against the defendant Day. According to his testimony, the defendants Day and Ward were talking, and as the deputy sheriff approached them he told them to throw up their hands. Ward stopped, and Day kept going. The deputy shot at Day with a shotgun and wounded him.

Herbert Day was the only one of the defendants who testified. According to his testimony, he went down to the still with Bill Ward and Jesse Johnson to buy some whiskey. Ward lived near there, and they intended to take him home. They all went to the still from Texarkana. The two stills were running when the defendants got there, and there were three persons operating them. They did not know who the persons operating the still were. The defendants asked them for some double-run whiskey. The persons operating the still told them that they would have to wait until they ran off the whiskey again. They were waiting there for them to run the whiskey through the still the second time, when they were captured by the officers. The defendants did not have anything to do with operating the still, and did not know who the guns belonged to which were taken by the officers.

The evidence for the State, if believed by the jury, warranted it in finding that the defendants were in possession of the still and were operating it; or at least that they were assisting in the matter. The undisputed evidence shows that the two stills were in operation, and the defendants say that three men were operating them. Under the evidence for the State, the jury might have found that the defendants were the men operating the

still and in possession of it. Hence the evidence was legally sufficient to support the verdict.

The next assignment of error is that the court erred in permitting the witness Clarence Beuhler to testify that he heard the defendants working at the distillery. There was no error in this respect. Beuhler was waiting and watching the still with the sheriff and the deputy sheriff. They could hear some one working at and operating the stills. When they captured the still, the defendants were then apparently in possession of it. At least no one else was there, and the two stills showed that they had been recently operated. The officers did not see any other person near the stills, and they only heard one other person run away as they approached the stills. Hence it was competent for the witness to testify that he heard the defendants working at the stills.

It is next insisted that the court erred in refusing to give instruction No. A, which reads as follows: "The mere fact that defendant with other persons were found at the still while the same was in operation is not alone sufficient to warrant you in convicting them as charged in this indictment." The court did not err in refusing to give this instruction. It singles out certain testimony, and by emphasizing it would tend to confuse and mislead the jury.

It is also insisted that the court erred in giving the following instruction: "If you find from the evidence in this case beyond a reasonable doubt that the defendants, in Miller County, Arkansas, at any time within three years before the indictment was returned into court, had in their possession a still for the purpose of manufacturing intoxicating liquor, or if you find from the evidence beyond a reasonable doubt that some other person had in his possession a still for the purpose of using it in the manufacture of intoxicating liquors, and the defendants were present at the time and aided, assisted or encouraged by words or acts such person in the possession of said still, it will be your duty to convict defendants and assess their punishment at imprisonment

in the penitentiary for some period of time not less than one year nor more than five years.''

We cannot agree with counsel in this contention. By their appearance, the two stills indicated that they had been recently operated. The Federal prohibition officer testified that he heard some one operating the stills. When the officers slipped up to the still, after daylight, they found the three defendants sitting on the ground, apparently in possession of the stills. They heard another person run away. According to the testimony of the defendant Day, three other persons were operating the stills, and ran away when they heard the officers approaching.

Hence the jury might have found that the defendants, while not the actual owners of the stills, were present and assisting the owner in the operation of the stills. To that extent they would be in joint possession of the stills with the actual owner. The indictment was based upon § 2 of act 324 of the General Acts of 1921. Among other things, it provides that no person shall keep in his possession any still without registering the same with the proper United States officer. We have held that the language of the statute is directed against the possession of the still by two or more persons jointly as well as by one person alone. *McGuffin* v. *State,* 156 Ark. 392. Section 6 of the act provides that any person who shall violate any of its sections shall be guilty of a felony, and shall be punished by imprisonment in the State Penitentiary. Under § 2311 of Crawford & Moses' Digest, all persons being present, aiding and abetting in any felony shall be deemed principal offenders, and indicted and punished as such. Therefore we are of the opinion that the court did not err in giving this instruction.

The respective theories of the State and of the defendants were fully and fairly submitted to the jury by the court, and we find no reversible error in the admission of evidence.

Therefore the judgment of the circuit court will be affirmed.