STATE, Respondent, v. QUIRAM, Appellant.

(219 N. W. 830.)

(File No. 6683. Opinion filed June 4, 1928.)

*Kelley & Luby,* of Huron, and *Chas. R. Hatch,* of Wessington Springs, for Appellant.

*Buell F. Jones,* Attorney General, and *Bernard A. Brown,* Assistant Attorney General, for the State.

MISER, C. Appellant was convicted of making intoxicating liquor for beverage purposes. The evidence shows that, about sundown on July 10th, at his home in Beadle county, appellant was told by one Palmer that he was "going to run off a batch" of moonshine that night; that, between 10 and 11 o'clock p. m., defendant reached Palmer's place about 15 miles distant, having had two punctures on the way over, and driving the last mile on the rim. When he got there, Palmer was running off some whisky in a cave a few rods from Palmer's house. It took appellant about a half hour to fix his tire. He was in the cave with Palmer about half an hour, went with Palmer to the well for water, was with Palmer when he pumped the water, walked back with Palmer when he carried it to the cave, was at the door of the cave two or three times more, took lunch with Palmer and his wife about 1 o'clock in the morning, and, when the officers arrived between 2 and 3 o'clock in the morning, appellant was standing at the door of the cave. When he saw the officers, he started to run, and, after running about eight rods, he stumbled and hid behind some weeds. There the flashlight was thrown upon him by the sheriff; and he was arrested. At the time the officers got there, about three quarts of moonshine whisky had been made; the stove was hot; and two half-barrels of mash were just outside the door of the cave. Palmer says no more was made that night, because the stove "went out" before the officers arrived. Appellant testified that he drove over to Palmer's place, at Palmer's invitation, to get a drink; that he was in the cave twice that night while Palmer was making the whisky; that he went with Palmer to the well twice while Palmer got four pails of water and took them to the cave; that he did not drink any because it was too hot and not good; that, after waiting from about 10 p. m. until about 2 a. m., he decided not to wait any longer, and was about to leave when the officers came. In explaining his presence to the officers at that time, he said:

"I told them I didn't have nothing to with it, and Carson (the sheriff) said, 'Like hell you haven't,' in a rough voice, and I didn't say any more to him or he to me."

Mrs. Palmer testified that, after serving the men their lunch about 1 o'clock, she lay down and went to sleep, and that, after that, appellant was not in the house.

Excepting as above stated, the evidence does not show that accused performed any of the immediate acts of manufacture. Is such watchful waiting and encouragement sufficient to support a verdict of guilty under section 10244, Rev. Code? Under that section, it is unlawful to aid in making intoxicating liquors. Furthermore, section 3594, Rev. Code, is as follows:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present are principals."

"The words 'aid' and 'abet' * * * as a general rule * * * comprehend all assistance rendered by acts or words of encouragement, incitement, or support, or presence, actual or constructive, with preconcert, with the intention of rendering assistance if necessary. * * * No particular acts are necessary; nor is it necessary that any physical part in the commission of the crime be taken; mere encouragement is enough." 16 C. J. 130, 131, note 89.

See, also, State v. Ferris, 189 Iowa, 505, 178 N. W. 361, 363; State v. Johnson, 198 Iowa, 588, 199 N. W. 316, 319; Johnson v. State, 21 Ala. App. 565, 110 So. 55; Crawford v. State, 133 Miss. 147, 97 So. 534. In Day v. State, 170 Ark. 786, 281 S. W. 11, 13, defendants, charged with unlawfully possessing·a still, explained their presence by saying that they had gone to buy second-run whisky, and the persons operating the still told them to wait until they ran off the whisky again; that, while waiting, the officers came, and those operating the still escaped. The court charged the jury that, if defendants were present at the time, and aided, assisted, or encouraged by words or acts such person in the possession of said still, it would be the duty of the jury to convict the defendant. This instruction was held good.

Here we have a defendant present at the scene of the crime by preconcert with the owner of the still from about 10 p. m. until about 3 a. m. as his companion. When Palmer goes to the well

for water, appellant goes along; twice he is with him in the cave, spending a half hour therein. Three times he is at the mouth of the cave, where the officers find him. During the last two hours prior to the arrival of the officers, Palmer's wife lies down to sleep, while accused is the sole companion of her husband, and is either in the cave or at the mouth of the cave. When the officers arrive, he runs, and, when pursued, attempts to conceal himself. Even accepting as true his story that he drove 15 miles for the purpose of getting a drink, and was just about to leave without having obtained a drink when the officers prevented his departure, the case presents more than mere presence at the scene of a crime. In addition thereto is admitted preconcert, at least a slight interest in the success of the distillation, and facts from which the jury might fairly infer encouragement in the enterprise. While the making of moonshine as an occupation has long since lost the element of novelty, assurance has not yet reached the stage, where, having a friend at the mouth of the cave at 3 a. m., is not productive of a certain sense of security and encouragement. While appellant and his witnesses gave testimony in explanation of his presence at that time and place, it was not the duty of the jury to accept as true testimony which their verdict indicates they did not believe to be true. We are of the opinion that the evidence was sufficient to sustain the conviction.

■ ■ Appellant particularly relies upon an assignment based upon misconduct of the jury in joking with the sheriff during meal-time, and in one of their number calling to a bailiff across the courtroom inquiring as to whether the agreement of all jurors was necessary to a valid verdict, which was answered by a nodded "Yes." It is apparent that there was no prejudice in this misconduct of which appellant can complain, highly censurable as it is that juries, bailiffs, and sheriffs should trifle, in this way, with the validity of verdicts.

The judgment and order appealed from must be, and are, affirmed.

BURCH, P. J., and POLLEY, SHERWOOD, CAMPBELL, and BROWN, JJ., concur.